UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

QUNTIUS SAUNDERS,

          Petitioner,          Case Number 2:11-CV-14863
                                             Honorable Arthur J. Tarnow

v.

KENNETH ROMANOWSKI,

          Respondent.
_____/

**OPINION AND ORDER DISMISSING THE PETITION FOR WRIT OF HABEAS CORPUS AND GRANTING A CERTIFICATE OF APPEALABILITY**

Quntius Saunders, ("Petitioner"), presently incarcerated at the Macomb Regional Correctional Facility, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petition challenges his November 30, 2009, Wayne Circuit Court convictions for armed robbery, MICH. COMP. LAWS § 750.529, and carjacking. MICH. COMP. LAWS § 750.529(a). Petitioner received concurrent terms of 10-to-15 years imprisonment. The petition raises a single claim: Petitioner's right to confront witnesses was denied when the out-of-court statements made by a non-testifying victim were admitted at trial. The Court will deny the petition because the claim is without merit. The Court will grant Petitioner a certificate of appealability.

I. Background

This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009):

> The complainant [Matthew Reese] in this matter testified that he contacted defendant, whom he had not previously known, via an interactive chat line and then arranged to meet defendant in person. Defendant provided directions to the complainant and, when the complainant arrived at the directed location, he parked his car in the street and saw defendant standing in a driveway. Defendant identified himself to the complainant and the two then began walking toward the house. At that time, defendant grabbed the complainant and pushed him against the house while another man emerged from the bushes and held a gun to the complainant's head. The men took the complainant's coat, wallet, cell phone, and car keys.
>
> The complainant ran to another house, and the occupants allowed him to call the police from their phone. While the complainant waited for the police, he saw defendant and the other man get into his car and drive it away.
>
> The complainant was talking with a police officer when another man, Mr. Andrew, approached the officer and said he, too, had just been carjacked. Andrew told the officer, Officer Pawl, that he had located his car in a parking lot and when Officer Pawl drove the complainant and Andrew to the parking lot, they saw defendant attempting to put keys in the door of Andrew's car. Defendant was thereafter arrested and charged with armed robbery and carjacking.

*People v. Saunders*, No. 296130, 2011 WL 1616750, *1 (Mich. Ct. App. Apr 26, 2011).

Based on this evidence Petitioner was convicted and sentenced as indicated above.

Petitioner filed an appeal in the Michigan Court of Appeals. His appellate counsel filed a brief that raised the following claims:

> I. Mr. Saunders was denied a fair trial where the trial court abused its discretion in granting the prosecution's motion to allow similar acts evidence, and when the necessary witness failed to appear to establish the similar acts, the court allowed the prejudicial testimony anyway.
>
> II. Mr. Saunders was denied a fair trial because the trial court allowed hearsay testimony regarding the alleged similar acts thereby denying Mr. Saunders his constitutional right to confront his accuser.

The Michigan Court of Appeals affirmed Petitioner's conviction in an unpublished opinion. Id.

Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court, raising the following claims:

> I. Mr. Saunders was denied a fair trial because the trial court allowed hearsay testimony regarding the alleged similar acts evidence thereby denying his constitutional right to confront his accuser.
>
> II. Ineffective assistance of trial counsel for failure to object. The prosecutor's witness failed to appear. Trial counsel did not object to evidence of Matthew Reese carjacking and armed robbery. Samaj Andrews failed to appear and the testimony was allowed. Andrews was on trial.

The Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed by the Court. *People v. Saunders*, 490 Mich. 861 (2011) (unpublished table decision).

## II. Standard of Review

28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable [*10] determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (*quoting Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). "[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (*quoting Williams*, 529 U.S. at 413). However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. , 131 S. Ct. 770, 789, 178 L. Ed. 2d 624 (2011), (*quoting Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87 (internal quotation omitted).

4

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams*, 529 U.S. at 412. Section 2254(d) "does not require citation of [Supreme Court] cases — indeed, it does not even require awareness of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). "[W]hile the principles of "clearly established law" are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007), citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

Lastly, a federal habeas court must presume the correctness of state court factual determinations. See 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

### III. Discussion

Petitioner claims that his confrontation rights were violated by the admission at trial of Andrews's statement to police that he had just been carjacked, and identifying Petitioner as the man who committed the crime. Respondent asserts that Petitioner's confrontation rights were not implicated because Andrews's out-of-court statement was nontestimonial as it related to an ongoing police emergency.

The Confrontation Clause of the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right. . . to be confronted with the witnesses against him." U.S. Const. amend. VI. "The Sixth Amendment's right of an accused to confront the witnesses against him is ... a fundamental right and is made obligatory on the States by the Fourteenth Amendment." *Pointer v. Texas*, 380 U.S. 400, 403 (1965). The rights of confrontation and cross-examination "have ancient roots" which the "Court has been zealous to protect . . . from erosion." *Id.* at 404-05 (internal quotation omitted).

In *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004), the Supreme Court held that the Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." As *Crawford* and its progeny make clear, it is only out-of-court statements with a "testimonial character" with which the Confrontation Clause is concerned. *See Davis v. Washington*, 547 U.S. 813, 821 (2006).

Although the Supreme Court did not define "testimonial" in *Crawford*, it has provided guidance in subsequent cases. Generally, "[s]tatements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *Id.* at 821. Thus, in *Davis*, 547 U.S. 813, the Supreme Court held that statements made to a 9-1-1 operator while the complainant was still in danger were nontestimonial but statements made to a police officer and written in an affidavit after the danger had dissipated were testimonial. Because the informal statements in *Davis* explained "events as they were actually happening" and "were necessary to be able to resolve the present emergency," they were nontestimonial. *Id.* at 827. By contrast, because

6

the more formal statements were "neither a cry for help nor the provision of information enabling officers immediately to end a threatening situation," *Id.* at 832, but rather "part of an investigation into possible criminal past conduct," *Id.* at 829, they were testimonial.

The Supreme Court recently had occasion to apply *Davis* in *Michigan v. Bryant*, 131 S. Ct. 1143 (2011). In *Bryant*, the statements at issue were made to the police by the mortally-wounded victim of a shooting as he lay dying in a gas station parking lot. *Bryant*, 131 S. Ct. at 1151. The victim explained to police that as he was leaving defendant Bryant's house, Bryant shot him through the door. *Id.* The victim told the police that after being shot he drove to the gas station where police found him. *Id.* Despite the fact that the statements were made at a location and time removed from the initial incident, the Court held that they were nontestimonial. The Court likened the situation to the "informal, harried 9-1-1 call in *Davis*." *Id.* at 1166. It also found significant, among other things, that the "[t]he police did not know, and [the victim] did not tell them, whether the threat was limited to him" and reasoned that thus "the potential scope of the . . . emergency in this case stretches more broadly than those at issue in *Davis*." *Id.* at 1164.

*Davis* and *Bryant* teach that statements must be evaluated in the context of the circumstances in which they are made. For example, in distinguishing the results in *Davis* and *Crawford*, the *Davis* Court highlighted: (1) the content of the declarant's statement, noting that she spoke about events as they were actually happening, rather than describing past events; (2) the perspective of the declarant, who was facing an ongoing emergency, rather than simply reporting a crime; (3) the nature of what was asked and answered, which involved questions and answers relevant to resolve the emergency; and (4) the relative level of informality of the interview, which was conducted by a 911 operator in a chaotic

atmosphere. *Davis*, 547 U.S. at 827. The Court acknowledged that nontestimonial statements may evolve into testimonial ones as the circumstances surrounding the conversation change, noting that "trial courts will recognize the point at which, for Sixth Amendment purposes, statements in response to interrogations become testimonial." *Id.* at 828-29; *Bryant*, 131 S.Ct. at 1159.

In the present case, the trial record shows that as the police were preparing to take the victim in their patrol car to the police station, they were "flagged down" by another man. The officers stopped the patrol car and spoke with the man:

> A: He too stated that he called the interactive male chat line and talked to, um, a gentleman that stated to come over to the area of 7677 Westwood.
>
> Q: Okay. And did he indicate that anything had been taken from him?
>
> A: He stated that . . . he pulled up in the location of Westwood and Sawyer and one suspect came up to him and said what's up and another came from behind him and pulled a gun on him. They put a sweatshirt over his face and they took his jacket, some other items and his vehicle.
>
> Q: Okay. Were you ever given any information of where this vehicle may be located?
>
> A: The second victim stated that he checked the area on foot for the vehicle and he found it in a parking lot.
>
> \*       \*       \*
>
> Q: Did you go to that location?
>
> A: Yes, we did.
>
> Q: And what did you observe as you arrived at that location?
>
> A: it was an empty parking lot. As we were pulling in that parking lot, I saw his vehicle, and we got closer, there was a gentleman standing, putting a key in the door.

Tr. 11/30/09, pp. 101-103. The officer then testified that the man standing next to the vehicle was Petitioner, and that the victim identified him as the perpetrator.

The context and circumstances of the second victim's statement indicate that it was nontestimonial. The second victim was talking about an event that had just happened and was directing the police to where his car was currently located. From the perspective of the second victim, he was asking the police to respond to an ongoing event and asking for assistance in retrieving his car. The nature of what was asked and answered involved questions and answers relevant to resolve the ongoing situation, and not to build a case against a known suspect. It obviously appeared to the police that the unknown perpetrators had set up a string of at least two robberies and might still be operating in the area. Lastly, the discussion between the second victim and the police was informal and conducted in a chaotic atmosphere.

That is, nothing about the statement bore the hallmarks of a testimonial statement. See, e.g., *Williams v. Illinois*, 132 S. Ct. 2221, 2242-43, 183 L. Ed. 2d 89 (2012) (plurality opinion) & 2250-51 (Breyer, J., concurring) (noting that in every *post-Crawford* decision finding a Confrontation Clause violation, "the statement at issue had the primary purpose of accusing a targeted individual," rather than an as yet unidentified suspect); *United States v. Dodds*, 569 F.3d 336, 340-41 (7th Cir.) cert. denied, 130 S. Ct. 523 (2009) (holding that a description of an armed gunman by an unidentified witness was not testimonial because the statement was made to assist the police in resolving an ongoing emergency); *United States v. Proctor*, 505 F.3d 366, 371 (5th Cir. 2007) (per curiam), cert. denied, 552 U.S. 1236, 128 S. Ct. 1457, 170 L. Ed. 2d 285 (2008) (finding statements made to 9-1-1

operator identifying assailant and describing past events as nontestimonial because they were made "immediately after" assailant had run away from the scene).

Because the statements to the police by the second victim were nontestimonial, Petitioner's confrontation rights were not implicated. The claim is therefore without merit, and the petition must be dismissed.

## IV. Conclusion

Based on the foregoing analysis, the Court concludes that Petitioner's claim is without merit and he has failed to demonstrate entitlement to habeas relief. Accordingly, the Court **DISMISSES** the petition for writ of habeas corpus.

Before Petitioner may appeal this decision, a certificate of appealability must issue. See 28 U.S.C. § 2253(c)(1)(a); FED. R. APP. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court denies a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. See Slack v. McDaniel, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003). In applying this standard, a court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the claims. Id. at 336-37. The Court concludes that a certificate of appealability is warranted in this case because reasonable jurists could debate the Court's assessment of Petitioner's claim. The Court will also allow Petitioner permission to proceed on appeal in forma pauperis.

After conducting the required inquiry and for the reasons stated herein, the Court is satisfied that jurists of reason could find the Court's decision debatable. A certificate of appealability is warranted in this case. Accordingly, the Court **GRANTS** a certificate of appealability.

**IT IS SO ORDERED**.


        s/Arthur J. Tarnow
        Arthur J. Tarnow
        Senior United States District Judge

Dated: May 9, 2013

I hereby certify that a copy of the foregoing document was served upon parties/counsel of record on May 9, 2013, by electronic and/or ordinary mail.

        s/Catherine A. Pickles
        Judicial Assistant